IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

MARK E. PUCKETT,                                                    Case No. 6:11-CV-06250-SU

                          Plaintiff,

                                                                              FINDINGS AND
        v.                                                                RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

_____Defendant._____

SULLIVAN, Magistrate Judge:

        Mark Puckett ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"),

42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner").   The Commissioner denied plaintiff's application for Title II

disability insurance benefits ("DIB") under the Act, 42 U.S.C. §§ 423.   For the reasons set forth

below, the Commissioner's decision should be REVERSED and this case should be REMANDED

for further proceedings.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On November 13, 2007, plaintiff protectively filed an application for DIB. Tr. 128-37. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 90. On April 8, 2010, an ALJ hearing was held before the Honorable John J. Madden, Jr., at which plaintiff testified and was represented by counsel. Tr. 38-74. A vocational expert ("VE") also testified at the hearing, as did plaintiff's wife, Teresa Puckett. Tr. 64-73. On May 11, 2010, ALJ Madden issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 20-29. After the Appeals Council declined to review the ALJ's decision on June 28, 2011, plaintiff filed a complaint in this Court. Tr. 1-5.

## FACTUAL BACKGROUND

Born on November 18, 1961, plaintiff was 45 years old on the alleged onset date of disability and 49 years old at the time of the hearing. Tr. 27, 130. Plaintiff dropped out of high school in the eleventh grade and has not obtained a GED. Tr. 43-44, 241. Plaintiff has past relevant work experience as a roofer foreman. Tr. 70, 149. He alleges disability beginning November 1, 2007 due to arthritis, headaches, and chronic pain in his "hip, shoulder, back, wrist, [and] knee." Tr. 130, 148.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the

Page 2 - FINDINGS AND RECOMMENDATION

[Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

Page 3 - FINDINGS AND RECOMMENDATION

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. § 404.1520(e) & (f). If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled. 20 C.F.R. § 404.1566.

## DISCUSSION

### I. The ALJ's Findings

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 22, Finding 2. At step two, the ALJ found that plaintiff had the following severe impairments: right shoulder impingement, status post-surgery; lumbar degenerative disc disease; and obesity. Tr. 22, Finding 3. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 23, Finding 4.

Because he did not establish disability at step three, the ALJ went on to evaluate how plaintiff's impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work "except that he can occasionally push and/or pull with the right upper extremity, occasionally climb a ladder/rope/scaffold, and occasionally stoop." Tr. 24, Finding 5. In addition, the ALJ found that plaintiff "can frequently climb ramps/stairs and frequently balance, kneel, crouch, and crawl, as well as occasionally reach overhead with the right upper extremity." *Id.* Plaintiff was also limited to work that did not involve "heights and

concentration of vibration." *Id.*

At step four, the ALJ determined that plaintiff was unable to perform his past relevant work. Tr. 27, Finding 6. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national and local economies that plaintiff could perform, such as cashier II, fast food worker, and packing line worker. Tr. 27, Finding 10. Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act and, accordingly, was not entitled to benefits. Tr. 28.

## II. Plaintiff's Allegations of Error

Plaintiff asserts that the ALJ erred by: 1) failing to evaluate whether he has a medically determinable and severe right foot impairment at step two; 2) finding his subjective symptom testimony not credible; 3) rejecting the lay testimony of Ms. Puckett; 4) improperly assessing the medical opinion evidence submitted by Dr. Harold Harmon, M.D.; and 5) failing to include all of his limitations in the RFC assessment, which rendered the VE's testimony invalid. *See* Pl.'s Br. 2.

### A. Step Two Findings

Plaintiff contends that the ALJ erroneously omitted his right foot condition as a medically determinable and severe impairment at step two. *Id.* at 15-16. At step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(ii). An impairment is "not severe" if it does not significantly limit the plaintiff's ability to do basic work activities. 20 C.F.R. § 404.1521(a); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Omissions at step two are harmless if the ALJ's subsequent

evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Here, the medical record contains references to a possible right foot impairment; however, this condition was not medically determinable at the time of the ALJ's decision. On May 4, 2009, plaintiff complained of right foot pain to his treating physician, Dr. Gregory Thomas, M.D. Tr. 411. As such, Dr. Thomas referred him to a specialist; on June 2, 2009, Dr. Richard Peffley, D.P.M., diagnosed plaintiff with "abnormal pronation [in his right foot] result[ing] in tibial ses[a]moiditis." Tr. 376-77. One month later, Dr. Peffley also diagnosed plaintiff with "distal tarsal tunnel syndrome involving Henry's knot and first metatarsal first cuneiform joint right foot." Tr. 379. On October 14, 2009, after receiving regular treatment for these conditions every two to four weeks, plaintiff reported that his right "foot is much better." Tr. 384. On October 28, 2009, Dr. Peffley concluded that these conditions were "stabilized"; while the doctor noted some residual pain, he stated that plaintiff "has responded nicely [to treatment] and is doing well with functional orthodontics." Tr. 385-86. Accordingly, plaintiff ceased treatment at that time. *Id.*

Thus, when the ALJ conducted his hearing on April 8, 2010, plaintiff's right foot condition had been successfully resolved after six months of treatment. There was no evidence in the record that his right foot would likely remain continuously painful for twelve months. As such, plaintiff failed to establish that his right foot condition met the durational requirements for a medically determinable impairment. *See* 20 C.F.R. § 404.1509; *see also Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). Therefore, the ALJ properly did not address plaintiff's alleged right foot impairment in the sequential evaluation process.

The fact that plaintiff resumed treatment with Dr. Peffley approximately three weeks after

Page 6 - FINDINGS AND RECOMMENDATION

his hearing, for a different foot condition, does not affect this Court's analysis.  Plaintiff sought

treatment again on April 28, 2010 for a possible neuroma in his right foot.  Tr. 489.  This condition

was resolved within one month of treatment.  Tr. 490.  Plaintiff did not return to Dr. Peffley until

two months later, when he "twisted his left ankle."  Tr. 491-92.  Thereafter, the record does not

reflect that plaintiff experienced any foot problems for nearly five months.  Tr. 492.  In January 2011,

because he began experiencing  an "uncomfortable rather than painful" sensation in his right foot,

plaintiff once again returned to Dr. Peffley.  Tr. 492-94.

Accordingly, even when viewing the record as a whole, including the additional evidence

submitted to the Appeals Council, plaintiff nonetheless failed to establish that he had a foot

condition that lasted for a continuous period of at least twelve months.[1]  Rather, the medical evidence

demonstrates that plaintiff experienced a number of discrete foot maladies, often separated from one

another by months, and each of which was successfully treated by Dr. Peffley.

Nevertheless, even if plaintiff were able to establish that this condition lasted for at least

twelve consecutive months, remand on this issue is nonetheless inappropriate.  Plaintiff does not

detail what restrictions flow from this alleged impairment.  Pl.'s Br. 15-16; *see also* Pl.'s Reply Br.

3-5.  There was no evidence before the ALJ, and none in the record, providing that plaintiff's right

foot condition created functional limitations or exacerbated his other alleged impairments.

As plaintiff acknowledges, the burden of establishing that an error is harmful "falls on the

---

[1]  The last treatment note from Dr. Peffley is dated February 16, 2011, at which point the doctor opined that plaintiff had a "chronic foot condition" that would require surgery.  Tr. 493-94.  The doctor nonetheless reported that the condition "will not worsen if treatment is delayed" and instructed plaintiff to "return in 6 months for followup."  Tr. 494.  Plaintiff did not submit any additional records to the Court regarding this impairment.  As such, there is no evidence that plaintiff continued treatment with Dr. Peffley after February 2011.

Page 7 - FINDINGS AND RECOMMENDATION

party attacking an administrative agency's determination." Pl.'s Br. 4 (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)). Recently, the Ninth Circuit held that *Sanders* applies to Social Security cases, explaining "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended). Yet plaintiff wholly neglected to address how the ALJ's error in assessing his alleged foot impairment was harmful and it is not apparent to this Court. Without more, plaintiff cannot establish that this condition significantly limits his ability to do basic work activities such that it should have been found severe at step two or been considered when determining his RFC assessment.

Thus, the ALJ's step two finding was based on the proper legal standards and on substantial evidence. Moreover, even if the ALJ erred in failing to address plaintiff's alleged right foot condition, such an error was harmless because it was "nonprejudicial to the claimant [and] irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Therefore, the ALJ's decision should be upheld in this regard.

B. Credibility of Plaintiff's Testimony

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting his subjective symptom testimony regarding the extent of his impairments. *See* Pl.'s Br. 21-24. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ may reject [his] testimony regarding the severity of symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281-82 (internal quotations omitted).

Page 8 - FINDINGS AND RECOMMENDATION

A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but that his statements regarding the extent of these symptoms were not fully credible. Tr. 24. First, the ALJ found that the "objective medical evidence [and exam findings do] not support the degree of severity alleged." Tr. 24-25. The ALJ then summarized the relevant medical evidence and noted that, despite the fact that plaintiff had seen a number of doctors and underwent extensive testing, the medical findings were all normal.[2] *Id.* For example, the ALJ explained that MRIs of plaintiff's lumbar spine "show[ed] only mild degenerative disc disease" and "did not show evidence of excessive osteoarthritis." *Id.* In addition, the ALJ remarked that, upon exam, plaintiff exhibited a full range of motion in his shoulders, a normal gait, a "grossly normal lumbar range of motion," normal strength, and "performed a toe and heel walk without difficulty." Tr. 25. Essentially, as Dr. Raymond Brumbaugh, M.D., opined and the ALJ noted, plaintiff "did not have any evidence of a serious disorder that would be expected to cause chronic disability." *Id.*; *see also* Tr. 275.

---

[2] There was no objective evidence supporting plaintiff's allegations of pain except in regard to his right shoulder impairment, which the ALJ acknowledged required two surgeries. Tr. 25.

Plaintiff contends that "a limitation cannot be lawfully rejected because the extent of the limitation is not demonstrated by objective medical evidence." Pl.'s Br. 22. Plaintiff, however, misstates the law on this point. The Ninth Circuit held that "it is improper as a matter of law for an ALJ to discredit excess pain testimony *solely* on the ground that it is not fully corroborated by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) (emphasis added); *accord Smolen*, 80 F.3d at 1281.

Thus, if that was the only reason the ALJ provided for finding plaintiff's testimony not credible, plaintiff would be entitled to the relief he seeks. However, after concluding that the objective medical evidence and exam findings belied plaintiff's statements regarding the severity of his symptoms, the ALJ proceeded to list two additional reasons why plaintiff's testimony was not credible: his activities of daily living and his self-limiting behaviors. Tr. 25-26.

Notably, the ALJ found that plaintiff's testimony regarding his daily activities suggested a level of functioning greater than what was alleged. Tr. 25. Inconsistencies in a claimant's testimony, including those between daily activities and the alleged symptoms, can serve as a basis for discrediting it. *Burch*, 400 F.3d at 680; *Smolen*, 80 F.3d at 1284 n.7. Further, contrary to plaintiff's assertion, "[t]his reasoning need not consider whether a claimant's daily activities are equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a totally debilitating impairment.'" *Hughes v. Astrue*, 2012 WL 1566227, *4 (D.Or. May 2, 2012) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)).

On his Adult Function Report, Plaintiff indicated that he has "no problem with personal care." Tr. 182. He remarked that he does "a little bit of work around the house," such as vacuuming and weeding or mowing the lawn. Tr. 58-59, 183. He stated that he prepares quick meals for

himself "daily" and that his cooking habits have not been affected by his alleged disability. Tr. 183. Plaintiff also testified that he goes outside daily, is able to drive a car and leave the house independently, and goes shopping for "fishing gear." Tr. 184. Plaintiff explained, however, that he does not do any additional chores, such as cleaning, cooking more extensive meals, and running errands, or manage his finances, because his "wife has always done so." Tr. 58-59, 183-84.

As for hobbies, plaintiff stated that he watches television, reads the paper, plays video games, and goes camping and fishing.[3] Tr. 60, 185, 334. In fact, in September 2009, plaintiff reported to Dr. Peffley that "he spent a week fishing in which he was walking on [r]ocky [s]hores [and] also went on a hunting trip with some friends." Tr. 282. Additionally, plaintiff testified he has "one or two" days per week in which he feels "pretty good." Tr. 55. On those days, plaintiff stated that he "may go to [in his] shop [in the backyard] and maybe reload some ammo . . . or maybe go out to mom and dad's and see them out on the farm." Tr. 55-56.

After specifically noting these activities, the ALJ found that the record directly contradicted plaintiff's contentions about how debilitating his pain and other limitations were. Tr. 25. Accordingly, the ALJ determined that these non-work activities reveal an ability to "perform a limited range of light work." Tr. 25. Thus, because plaintiff's level of activity is inconsistent with the degree of impairment that he alleges, the ALJ found plaintiff's testimony about the severity of his limitations not credible. *Id.*

The foregoing discussion reveals that the ALJ identified substantial and specific evidence in the record that undermines plaintiff's claims that his impairments were so great that he was totally

---

[3] At the time of the hearing, however, plaintiff stated that he had not been fishing for "almost six months." Tr. 63.

disabled and unable to work.  Although the evidence of daily activities may also admit of an interpretation more favorable to plaintiff, the ALJ's interpretation is nonetheless reasonable. Accordingly, I find that the ALJ provided a clear and convincing reason to reject plaintiff's subjective testimony regarding the extent of his limitations and, as such, it is unnecessary for this Court to further discuss the other reasons provided.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  Therefore, the ALJ's finding regarding plaintiff's credibility should be upheld.

### C.  Credibility of the Lay Testimony

Plaintiff asserts that the ALJ failed to provide a legally sufficient reason to reject Ms. Puckett's testimony.  Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account.  *Molina*, 674 F.3d at 1114 (citations omitted).  The ALJ must provide reasons germane to each witness in order to discount competent lay testimony.  *Id.*; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (lay testimony may be rejected where it is inconsistent with the claimant's daily activities or the objective medical evidence).

Here, Ms. Puckett offered testimony relating to plaintiff's symptoms at the hearing and

Page 12 - FINDINGS AND RECOMMENDATION

completed a Third-Party Adult Function Report. Tr. 64-68, 165-80. In both instances, her testimony

was nearly identical to plaintiff's. *Id.* The ALJ found that Ms. Puckett's testimony was not credible

because it was inconsistent with "the objective medical evidence, as well as, the claimant's reported

activities." Tr. 27. Thus, the ALJ rejected Ms. Puckett's statements for the same reasons that he

discredited plaintiff's testimony.[4]

        As discussed above, the ALJ provided clear and convincing reasons to reject plaintiff's

testimony; therefore, it follows that the ALJ did not err in discrediting Ms. Puckett's testimony. *See*

*Valentine*, 574 F.3d at 694. Accordingly, the ALJ's decision should be upheld as to this issue.

        D.  Medical Opinion Evidence

        Plaintiff contends that the ALJ erred by improperly assessing the opinion of Dr. Harmon.

Pl.'s Br. 20-21. There are three types of medical opinions in social security cases: those from

treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear

and convincing reasons for doing so. *Bayliss*, 427 F.3d at 1216. However, if a treating or examining

doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and

legitimate reasons. *Id.*

        When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not

supported by clinical findings, or is brief or conclusory. *Id.* In addition, a doctor's work restrictions

---

        [4] Plaintiff attempts to rephrase the issue presented so that it falls outside of the Ninth
Circuit's well-settled precedent regarding lay testimony; namely, he asserts that the ALJ did not
discredit Ms. Puckett because "there was a contradiction," but rather because the ALJ "would
only credit what the wife observed if it made no difference to the case," which is a legally
insufficient reason. Pl.'s Reply Br. 5 (citing *Dodrill*, 12 F.3d at 918-19). Plaintiff's argument is
unpersuasive. The language quoted above clearly demonstrates that the ALJ discredited Ms.
Puckett due to inconsistencies between her statements and the administrative record. Tr. 27.

based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than credible.  *See*, *e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ provided a clear and convincing reason to reject a doctor's opinion where it was in the form of a checklist, lacked supporting objective evidence, was contradicted by other statements on the record, and was based on subjective descriptions).

Dr. Harmon became plaintiff's treating physician in November 2009.  Tr. 477.  On April 7, 2010, after three appointments, Dr. Harmon completed a check-the-box "Medical Source Statement" pursuant to plaintiff's application for DIB.  Tr. 482-86.  In his statement, Dr. Harmon indicated that plaintiff would need to lie down more than six hours out of an eight-hour workday.  Tr. 482.  Dr. Harmon also noted that plaintiff's "chronic depression" exacerbated his physical symptoms.  Tr. 484. Moreover, the doctor reported that plaintiff had experienced three episodes of mental decompensation within the past twelve months, each which lasted for at least two weeks.  Tr. 485. As such, Dr. Harmon opined that plaintiff had very limited functional abilities, stating that he could stand for less than fifteen minutes, must change position every fifteen minutes, and required several unscheduled breaks during an eight-hour workday.  Tr. 482.

Plaintiff argues that the Dr. Harmon's opinion "should have been accorded special weight." Pl.'s Br. 20 (citing 20 C.F.R. § 404.1527(d)(2); and SSR 96-2p, *available at* 1996 WL 374188). However, as the ALJ noted, Dr. Harmon's opinion is inconsistent with nearly every other treating, examining, or non-examining doctor.  *Compare* Tr. 482-86 (Dr. Harmon's assessment), *with* Tr. 263-70 (Dr. Westfall's assessment), Tr. 274-75 (Dr. Brumbaugh's assessment), Tr. 279-86 (Dr. Berner's assessment), Tr. 287-99 (Dr. Lahman's assessment), *and* Tr. 354 (Dr. Tobin's assessment);

*see also* Tr. 26.  Thus, the question is whether the ALJ set forth specific and legitimate reasons for giving little weight to Dr. Harmon's opinion.  *Bayliss*, 427 F.3d at 1216; *see also Lester*, 81 F.3d at 830.

Here, the ALJ gave Dr. Harmon's opinion "less weight" because it was based "largely [on] the claimant's subjective complaints."  Tr. 26.  Dr. Harmon's reports do not contain or refer to any clinical evidence.  Tr. 477.  Instead, they appear to be based almost entirely on plaintiff's subjective statements.  *Id.*  Plaintiff's hearing testimony corroborates this fact.  Plaintiff remarked that Dr. Harmon had not performed any examinations or objective medical testing; rather, he explained that Dr. Harmon merely listened to his complaints and reflected limitations associated with those complaints in the Medical Source Statement.  Tr. 51, 57.  Thus, substantial evidence supports the ALJ's determination that Dr. Harmon's assessment was based primarily on plaintiff's subjective reports, which were properly discredited.  For this reason, the ALJ's determination should be upheld. *See Bray*, 554 F.3d at 1228.

The ALJ also discredited Dr. Harmon's evaluation because it was "not supported by the doctor's own treatment records."  Tr. 26.  The ALJ is correct.  Dr. Harmon's notes reflect that plaintiff sought treatment mainly for back pain,[5] which was responding well to medication and physical therapy.  Tr. 477.  Yet in his Medical Source Statement, the doctor opined that plaintiff had significant psychological impairments that intensified his physical symptoms, including three recent

---

[5]  Only one note indicates that plaintiff sought treatment for a mental health impairment, for which Dr. Harmon prescribed Zoloft.  Tr. 477.  At the time of the hearing, plaintiff had only been taking Zoloft for "about three weeks" and had not undergone any mental health counseling. Tr. 52.  He therefore indicated that it was too soon to tell if the prescription was effective.  Tr. 52, 54.  Plaintiff, however, did state that "I'm a little bit more peppier than I was [before beginning Zoloft.]" Tr. 52.

episodes of decompensation. Tr. 484. The Court, however, notes that there is minimal evidence of plaintiff's alleged mental impairments in the record and no evidence that he suffered even a single episode of decompensation. Moreover, Dr. Harmon stated that plaintiff's physical abilities were severely impaired, despite the fact that his treatment notes do not reflect any functional limitations. Tr. 477. As the ALJ noted, there is simply nothing in Dr. Harmon's reports that support the extreme physical and mental limitations assessed in the Medical Source Statement. Accordingly, for this additional reason, the ALJ properly discredited Dr. Harmon's opinion.

In sum, the ALJ found that Dr. Harmon's report merited little weight because it was in the form of a checklist, lacked supporting objective findings, was contradicted by the doctor's own notes and other medical statements in the record, and was based primarily on plaintiff's subjective statements. Therefore, because I find that he set forth legally sufficient reasons, the ALJ's decision should be upheld as to the weight afforded to Dr. Harmon's opinion.

E.  RFC Determination

Finally, plaintiff asserts that the ALJ failed to accommodate the full range of his limitations in the RFC assessment. Specifically, plaintiff argues that the ALJ did not incorporate limitations based on his subjective statements, the lay testimony, and Dr. Harmon's opinion. Pl.'s Br. 26. Plaintiff argues that these omissions render the VE's testimony invalid. As discussed above, this Court finds that the ALJ did not improperly assess such evidence. Thus, plaintiff is unable to demonstrate that the RFC or the VE's testimony were incomplete in regard to this evidence. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

In addition, plaintiff asserts that the ALJ failed to include limitations arising out of his right foot condition and left shoulder impairment, as evinced by the additional evidence submitted to the

Appeals Council.  Pl.'s Br. 14-15, 26.  It is undisputed that the evidence regarding plaintiff's right foot condition was incorporated into the administrative record because the Appeals Council addressed those materials in the context of denying his request for review.  Tr. 1-5; *see also Ramirez v. Astrue*, 8 F.3d 1449, 1451-54 (9th Cir. 1993); *Taylor v. Comm's Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011).  As discussed in section II(A), the ALJ did not err in failing to include plaintiff's alleged right foot impairment in the five-step disability analysis because it was not medically determinable.

The evidence regarding plaintiff's left shoulder is a different matter.  While plaintiff did timely submit those materials pursuant to his request for review, the Appeals Council did not acknowledge or address them.  Tr. 5.  According to plaintiff, the Appeals Council improperly rejected the additional evidence relating to his left shoulder because it erroneously believed that those materials did not relate back to the period prior to the ALJ's decision.  Pl.'s Br. 14-15.  The Commissioner contends that the additional evidence was properly rejected by the Appeals Council because it was not material and did not relate to the "'period on or before the date of the [ALJ's] hearing decision.'"  Def.'s Resp. Br. 7 (citing 20 C.F.R. §§ 404.976(b)(1), 404.970(b)).

The Commissioner is correct that the Appeals Council can only consider new evidence that is material and which "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R.§ 404.976(b)(1); 20 C.F.R. § 404.970(b); *see also Bates v. Sullivan*, 894 F.2d 1059, 1064 (9th Cir.1990).  Here, the new evidence regarding plaintiff's left shoulder meets these requirements.

Treatment records from as far back as 2005 reflect that plaintiff was suffering from left should pain.  Tr. 463, 466.  Further, on February 4, 2008, plaintiff reported that "he has had pain for several years in . . . [both] shoulders."  Tr. 271.  Later that year, plaintiff again reported left shoulder

Page 17 - FINDINGS AND RECOMMENDATION

pain, for which he underwent diagnostic testing. Tr. 397. The newly submitted evidence reveals that surgery was ultimately required to remedy plaintiff's left shoulder condition, which was "degenerative" in nature. *See* Pl.'s Br. Ex, at 4. Thus, even though the evidence at issue was generated nine to twelve months after the ALJ's decision, it clearly relates back to the relevant period.

Because these materials were not before the ALJ, they were not reflected in his five-step sequential evaluation; moreover, because the new evidence was material and related back to period before the ALJ's decision, it should have been incorporated into the record and addressed by the Appeals Council pursuant to plaintiff's request for review. *See Taylor*, 659 F.3d at 1233. The failure to consider this evidence constitutes harmful error. *Id.* Therefore, this case should be remanded to the ALJ for the limited purpose of addressing the additional materials that relate to plaintiff's possible left shoulder condition. If necessary, the ALJ must then revise the RFC determination. Finally, the ALJ must incorporate any revised findings into his step-five determination.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's decision should be REVERSED and this case should be REMANDED for further proceedings consistent with this Findings and Recommendation.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due June 11, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

Page 18 - FINDINGS AND RECOMMENDATION

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

DATED this 25th  day of May, 2012.


/s/ Patricia Sullivan

Patricia Sullivan
United States Magistrate Judge