IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MARK E. PUCKETT**, <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL J. ASTRUE**, Commissioner of Social Security Administration, <br><br> Defendant. | Case No.: 6:11-cv-06250-SU <br><br> **OPINION AND ORDER** |

Max Rae, PO Box 7790, Salem, OR 97303. Of attorney for plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, U.S. Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, OR 97201; Benjamin J. Groebner, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of attorneys for Defendant.

**SIMON, District Judge**.

On May 11, 2010, Administrative Law Judge ("ALJ") John J. Madden, Jr. issued a decision denying Plaintiff Mark E. Puckett's ("Mr. Puckett") claim for social security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Tr. 17-29. After Defendant Michael J. Astrue, Commissioner of Social Security (the "Commissioner"), denied his request for review, Tr. 1-5, Mr. Puckett filed a complaint in the district court seeking review of the ALJ's decision. Dkt. 1. On May 25, 2012, Magistrate Judge Patricia Sullivan issued Findings and Recommendations ("F&R") in Mr. Puckett's case, Dkt. 15, and referred them to this Court. Dkt. 16. Judge Sullivan recommended that the Court reverse the Commissioner's decision and

Page 1 – OPINION AND ORDER

remand the case for the limited purpose of addressing new evidence concerning Mr. Puckett's "possible left shoulder condition." F&R at 18. Mr. Puckett filed objections, arguing either that the court should order an immediate award of benefits or that the court should remand the case for a complete reassessment. Dkt. 17. The Commissioner filed a response. Dkt. 18.

Under the Federal Magistrates Act, the court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." Federal Magistrates Act, 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

For those portions of an F&R to which neither party has objected, the Magistrates Act does not prescribe any standard of review: "There is no indication that Congress, in enacting [the Magistrates Act], intended to require a district judge to review a magistrate's report[.]" *Thomas v. Arn*, 474 U.S. 140, 152 (1985); *see also United States. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied*, 540 U.S. 900 (2003) (the court must review *de novo* magistrate's findings and recommendations if objection is made, "but not otherwise"). Although in the absence of objections no review is required, the Magistrates Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154. Indeed, the Advisory Committee Notes to Fed. R. Civ. P. 72(b) recommend that "[w]hen no timely objection is filed," the court review the magistrate's findings and recommendations for "clear error on the face of the record."

Upon *de novo* review of those portions of Judge Sullivan's F&R to which Mr. Puckett objects and upon clear error review of the remainder of the F&R, the court adopts in part Judge

Sullivan's F&R. The decision of the Commissioner is reversed and the case is remanded with instructions, as described in the conclusion, below.

## DISCUSSION

Mr. Puckett raises six objections to Judge Sullivan's F&R. Mr. Puckett contends: (1) The ALJ erred in rejecting Theresa Puckett's lay witness testimony; (2) the ALJ erred in discrediting portions of Mr. Puckett's testimony; (3) the ALJ erred in discounting Dr. Harold Harmon's medical source statement; (4) the ALJ failed to properly evaluate Mr. Puckett's residual functional capacity ("RFC"); (5) the ALJ failed to address Mr. Puckett's right foot condition and Judge Sullivan improperly found that the omission was harmless error; and (6) Judge Sullivan's recommended remand order is too narrow. For the reasons discuss below, the court adopts Judge Sullivan's findings, except those findings relating to Mr. Puckett's right foot condition. In addition, the court finds that on remand the Commissioner should address the right foot condition and re-evaluate Mr. Puckett's mental RFC, as described more fully in the conclusion.

Mr. Puckett also argues that the court should remand his case for an immediate award of benefits, not for further proceedings. Mr. Puckett's argument, however, is contingent on the court accepting his objection that the ALJ erred in assessing Dr. Harmon's medical opinion. Pl.'s Obj. at 34. Because the court agrees with Judge Sullivan that the ALJ properly discounted Dr. Harmon's opinion, there is insufficient evidence to warrant an immediate award of benefits.

**A.    Lay Witness Testimony**

Mr. Puckett's wife, Theresa Puckett, submitted a third-party function report, Tr. 165-172, and testified at Mr. Puckett's hearing before the ALJ. Tr. 63-67. Theresa Puckett testified that Mr. Puckett sometimes needs to take two naps each day and is unable to complete common chores such as washing the car. Tr. 65. Lay witness testimony, such as Theresa Puckett's third-

party function report and hearing testimony, "is competent evidence and cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotation marks, citation, and emphasis omitted). To reject lay witness testimony, the ALJ must give "reasons germane to each witness[.]" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).

The ALJ rejected Theresa Puckett's testimony for two reasons. The ALJ found that Theresa Puckett's testimony was inconsistent with the objective medical evidence and Mr. Puckett's activities of daily living:

> While [Theresa Puckett's] testimony may reflect her personal observations of the claimant to some degree, the objective medical evidence, as well as[] the claimant's reported activities as discussed above[,] does not support finding a more restrictive residual functional capacity than for a limited range of light work. By the wife's own account in 2007, the claimant attended to personal care without problems and he did some household chores, including vacuuming and mowing. The wife also indicated that the claimant prepared simple meals daily. . . . Therefore, [Theresa Puckett's] testimony is given less weight.

Tr. 27. Judge Sullivan found that the ALJ "did not err in discrediting" Theresa Puckett's testimony. F&R at 13.

Mr. Puckett objects. He argues that neither reason cited by the ALJ provides an adequate basis on which to discredit Theresa Puckett's testimony. Pl.'s Obj. at 18-23. Mr. Puckett argues that the ALJ's first reason to discredit Theresa Puckett's testimony fails because under Ninth Circuit precedent "an ALJ may not discredit lay testimony as not supported by medical evidence[.]" Pl.'s Obj. at 19. This may be correct. *See Bruce*, 557 F.3d at 1116 ("under our law" an ALJ may not discredit "lay testimony as not supported by medical evidence in the record"). Even so, the ALJ's other reason provides an adequate and germane reason to reject Theresa Puckett's testimony.

The ALJ's second reason to discredit Theresa Puckett's testimony is that her testimony is inconsistent with many of Mr. Puckett's self-reported activities. The ALJ cited a treatment note,

Page 4 – OPINION AND ORDER

for example, stating that Mr. Puckett "recently spent a week fishing in which he was walking on [r]ocky [s]hores. He also went on a hunting trip with some friends." Tr. 382. Mr. Puckett contends that this evidence does not contradict Theresa Puckett's testimony because "the fact that [he] went fishing and on a hunting trip does not describe how active he was or how long he was active once there, much less whether such activity could have been performed on a sustained basis." Pl.'s Obj. at 22. The court disagrees. Both hunting and fishing are physical activities that are performed outdoors. They each require walking and a range of upper body movement. The treatment note cited by the ALJ indicates that Mr. Puckett performed these activities for extended periods: Mr. Puckett spent a week fishing and went on a hunting trip. The treatment note also indicates that Mr. Puckett was active while on his trip: It states that he was walking on rocky shores. That sort of extended, physical activity, performed outdoors, and away from the home, contradicts Theresa Puckett's testimony that Mr. Puckett was so physically limited that he could not wash the car. Accordingly, the ALJ provided a germane reason to discredit Theresa Puckett's testimony. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ provided germane reason to discredit lay witness testimony where the testimony conflicted with the claimant's "presentation to treating physicians").

Mr. Puckett also objects to Judge Sullivan's F&R because Judge Sullivan "review[ed] the ALJ's findings regarding [Mr.] Puckett's credibility *before* considering" Theresa Puckett's lay witness testimony. Pl.'s Obj. at 15 (emphasis added). Mr. Puckett argues that this was error because addressing the claimant's credibility before lay testimony "reverses the required order of consideration." *Id*. "As a matter of logic," Mr. Puckett explains,

> conclusions required to be based on particular items of evidence may not be used as a basis for assessing the evidence upon which those conclusions are required to be based. When evaluating a claimant's credibility, the entire case record must be considered. Social Security Ruling 96-7p; 20 CFR § 404.1529(a). Therefore, before the credibility of

Page 5 – OPINION AND ORDER

>the claimant can be reviewed, all issues regarding the evidence upon which that credibility assessment must be based must first be resolved; and that underlying evidence includes the wife's observations.

Pl.'s Obj. at 15-16 (internal footnotes omitted). Mr. Puckett cites to no statute, administrative rule, Social Security Administration ruling, or court decision providing that judges or ALJs must write or explain their decisions in any particular order. The court is aware of none and declines to impute such a requirement.

In any event, contrary to Mr. Puckett's argument, it is not proof of error for a judge or an ALJ to address a claimant's credibility before lay witness credibility in a written decision. Mr. Puckett's argument erroneously supposes that the order in which an adjudicator addresses discrete topics in a written decision is necessarily indicative of the logical thought process by which that adjudicator reached the decision. Yet a written decision need not be written in a particular order for its logical conclusions to be correct. A judge or an ALJ may, for practical reasons such as ease of comprehension or organizational clarity, address one topic before another, even if the first may be dependent in part upon resolution of the second. In fact, because social security disability cases involve large, complex, and interconnected evidentiary records, and a multitude of discrete legal standards, it may be impractical or unwise for a judge or ALJ to write a decision in a strictly linear or syllogistic order. Judge Sullivan did not err, therefore, merely because she discussed Theresa Puckett's testimony before discussing Mr. Puckett's credibility. This court will now follow Judge's Sullivan's findings.

### B.     Mr. Puckett's Credibility

Mr. Puckett argues that Judge Sullivan erroneously held that the ALJ correctly evaluated Mr. Puckett's credibility. The ALJ discredited portions of Mr. Puckett's hearing testimony that suggested he was unable to perform light work. Tr. 24-25. The ALJ explained that Mr. Puckett's

testimony was inconsistent with both objective medical evidence and Mr. Puckett's reported activities of daily living. *Id.* Judge Sullivan agreed. Judge Sullivan found that both reasons cited by the ALJ were proper reasons for discrediting a claimant's testimony. F&R at 8-12. Judge Sullivan concluded that the "ALJ provided a clear and convincing reason to reject [Mr. Puckett's] subjective testimony regarding the extent of his limitations[.]"F&R at 12.

Mr. Puckett objects and renews his arguments that the ALJ's reasons with respect to both the objective medical evidence and Mr. Puckett's activities of daily living are insufficient. The court agrees with Judge Sullivan. As discussed in Judge Sullivan's F&R, both reasons cited by the ALJ are valid reasons to discredit a claimant's testimony and are supported by substantial evidence. *See* F&R 8-12; *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (activities of daily living may be grounds for discrediting claimant where they contradict claimant's testimony); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

Mr. Puckett also contends that because the ALJ "improperly discredited" Theresa Puckett's testimony and Dr. Harold Harmon's opinion, "the ALJ's credibility assessment cannot be said to have been made based on a proper consideration of the record as a whole." Pl.'s Obj. at 30-31. Not all evidence in the record, however, is probative of the claimant's credibility. Theresa Puckett's testimony, like Mr. Puckett's testimony, is inconsistent with his activities of daily living and the objective medical evidence. As discussed below, Dr. Harmon's opinion was

Page 7 – OPINION AND ORDER

based largely on Mr. Puckett's self-reports, rather than examinations and tests. Accordingly, neither Theresa Puckett nor Dr. Harmon support Mr. Puckett's credibility.

**C.      Dr. Harold Harmon's Medical Source Statement**

Dr. Harold Harmon, one of Mr. Puckett's treating physicians, completed a medical source statement, consisting largely of "check-the-box" questions and answers. Tr. 482-86. Dr. Harmon checked boxes indicating that Mr. Puckett needs to rest in a supine position for six hours each day, and is unable to sit for more than 15 minutes at a time. Tr. 482-83. Dr. Harmon wrote that Mr. Puckett suffers from chronic depression and spinal osteoarthritis. Tr. 484-85. The ALJ found that Dr. Harmon's medical source statement was "not persuasive." He explained that

> Dr. Harmon's opinion is not found to be persuasive as it is not supported by the doctor's own treatment records, which largely only show the claimant's subjective complaints . . . Dr. Harmon's opinion is also inconsistent with other treatment records, which show that shoulder symptoms improved . . . . The claimant testified that the doctor's responses are based on his self-report. Given the significant credibility concerns regarding the claimant's self-report . . . Dr. Harmon's opinion is given less weight.

Tr. 26. Judge Sullivan found that the ALJ "set forth legally sufficient reasons" to afford little weight to Dr. Harmon's opinion. F&R at 16.

Mr. Puckett objects and argues that "Dr. Harmon's assessments should have been accorded special weight." Pl.'s Obj. at 24. The court, however, agrees with Judge Sullivan. Judge Sullivan's findings state the proper Ninth Circuit standards for evaluating medical opinions and properly assess the ALJ's decision in light of those standards. F&R 13-16. As Judge Sullivan explained, Dr. Harmon's opinion is inconsistent with both his own treatment notes and the other medical opinions. *See Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir.1996) (ALJ properly cited inconsistency between treating doctor's treatment notes and his report as reason to discount his opinion). Moreover, as the ALJ and Judge Sullivan noted, Dr. Harmon's opinion is based on Mr. Puckett's self-reports, not on independent clinical findings. F&R at 15; *see also* Tr. 51

Page 8 – OPINION AND ORDER

(Mr. Puckett testifying that Dr. Harmon has not performed an exam); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ "may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible" (internal quotation marks and citation omitted)); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ properly discounted Dr. Harmon's opinion.

### D.     Residual Functional Capacity

Mr. Puckett contends that the ALJ improperly formulated his RFC. Pl.'s Obj. at 31-33. Mr. Puckett first argues that the ALJ failed to "consider the medical and lay evidence." *Id.* at 32. This argument is derivative of Mr. Puckett's arguments regarding Theresa Puckett's lay testimony and Dr. Harmon's opinion, discussed above. Because the ALJ properly discredited both those sources, the ALJ did not err in omitting Theresa Puckett's testimony and Dr. Harmon's opinion from the RFC.

Mr. Puckett next argues that the ALJ erred because he "failed to include any mental limitations in the residual functional capacity." *Id.* at 33. In assessing Mr. Puckett's mental symptoms, the ALJ relied on the opinion of Dr. Frank Lahman. Tr. 23. Dr. Lahman completed a psychiatric review technique form ("PRTF"), as described in 20 C.F.R. § 404.1520a. Tr. 287-300. In the PRTF, Dr. Lahman noted that Mr. Puckett had been diagnosed with and treated for depression. Tr. 299. In the section of his report documenting the Paragraph B criteria,[1]

---

[1] The "Paragraph B criteria" address four functional areas. The ALJ must make a finding for each area: "When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the

Dr. Lahman found that depression caused Mr. Puckett no limitations in activities of daily living, but mild restrictions in social functioning, concentration, persistence, and pace. Tr. 297, 299. In his written summary, Dr. Lahman concluded that Mr. Puckett's depression was "non-severe." Tr. 299. Dr. Lahman also concluded, however, that Mr. Puckett "may have some problems paying attention when he is in significant pain[.]" Tr. 299. The ALJ did not include any limitations on social functioning or concentration in the RFC. Tr. 24.

The court finds that this was error. The social security regulations require the ALJ to "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware, including [the claimant's] medically determinable impairments that are not 'severe'" when formulating a claimant's RFC. 20 C.F.R. § 404.1545(a)(2); *see also* SSR 96-8p ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim."); *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008) (the "ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe"). The ALJ should have considered whether Dr. Lahman's finding that Mr. Puckett may have mild restrictions in social functioning and concentration warranted inclusion in Mr. Puckett's RFC. On remand, the Commissioner must make that assessment.

---

following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates "the degree of [the claimant's] limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that [the claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]" *Id.* at § 404.1520a(d)(1).

Page 10 – OPINION AND ORDER

Mr. Puckett also argues that the ALJ erred in formulating an RFC that provided that Mr. Puckett could "occasionally climb ropes." Pl.'s Obj. at 33. The ALJ's finding that Mr. Puckett could occasionally climb ropes, however, was based on the functional assessment provided by Dr. Neal Berner. Tr. 26; *see* Tr. 281 (Dr. Berner found that Mr. Puckett could occasionally climb a ladder, rope, or scaffold). The ALJ's inclusion of Dr. Berner's assessment in the RFC was not error.

### E.    New Evidence and Remand Order

After the ALJ issued his decision denying Mr. Puckett benefits, Mr. Puckett requested review by the Commissioner's Appeals Council. Tr. 13. As part of that request, Mr. Puckett submitted updated medical evidence pertaining to two alleged conditions: pain in his right foot and pain in his left shoulder. Tr. 6-7, 487-494; Dkt. 11-1, 11-2. The Appeals Council incorporated evidence relating to Mr. Puckett's right foot condition into the administrative record, but did not address or incorporate into the administrative record evidence pertaining to Mr. Puckett's left shoulder condition. Tr. 4-5; Dkt. 11-1, 11-2. Judge Sullivan found that the new evidence concerning Mr. Puckett's foot condition did not alter the ALJ's decision because the foot condition "was not medically determinable." F&R at 17. Judge Sullivan also found, however, that the Commissioner erred in failing to address the new evidence pertaining to the left shoulder condition. F&R at 18. Accordingly, Judge Sullivan recommended that the court reverse the ALJ's decision and remand the case "for the limited purpose of addressing the additional materials that relate to [Mr. Puckett's] possible left shoulder condition. If necessary, the ALJ must then revise the RFC determination. Finally, the ALJ must incorporate any revised findings into his step-five determination." *Id.*

Mr. Puckett makes two objections to Judge Sullivan's recommendation. First, Mr. Puckett contends that the new evidence that he submitted to the Appeals Council regarding his right foot condition demonstrates that his right foot condition is medically determinable. Accordingly, he contends that the right foot condition should be reviewed on remand. Pl.'s Obj. at 12-14. Second, Mr. Puckett contends that Judge Sullivan's remand recommendation is too narrow because it would "restrict reconsideration to the [s]tep [two] question and, possibly, residual functional capacity." Pl.'s Obj. at 4.

### 1. Right root condition

The ALJ did not discuss Mr. Pluckett's alleged right foot condition in his decision. Even so, Judge Sullivan found that this omission was harmless error because the evidence did not establish that Mr. Puckett's right foot condition was sufficiently severe or limiting to warrant a finding of disability. F&R at 5-8. Judge Sullivan reached this conclusion on two bases. First, Judge Sullivan found that Mr. Puckett's right foot condition did not meet the "duration requirement" set forth in 20 C.F.R. § 404.1509. The duration requirement provides that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" to warrant a finding of disability. 20 C.F.R. § 404.1509. According to Judge Sullivan, there "was no evidence in the record that [Mr. Puckett's] right foot would likely remain continuously painful for twelve months. As such, [Mr. Puckett] failed to establish that his right foot condition met the durational requirements for a medically determinable impairment." F&R at 6. Judge Sullivan also found that the new evidence submitted to the Appeals Council did not alter this judgment because "the medical evidence demonstrates that plaintiff experienced a number of discrete foot maladies, often separated from one another by months[.]" F&R at 7.

Mr. Puckett first reported "discomfort" in his right foot on May 4, 2009. Tr. 411. On June 6, 2009, Dr. Richard Peffley provisionally diagnosed "[t]ibial ses[a]moiditis"[2] in Mr. Puckett's right foot. Tr. 376. Dr. Peffley treated Mr. Puckett for this condition throughout the summer of 2009, until October 2009, when he reported that Mr. Puckett "has responded nicely and is now doing well with functional orthotics. The soreness that he still has . . . should gradually dissipate." Tr. 377-86. There are no further records documenting a right foot condition in the record submitted to the ALJ. The new evidence, submitted to the Appeals Council, however, shows that Mr. Puckett returned to Dr. Peffley on April 28, 2010, and several times thereafter, complaining of pain in his right foot. Tr. 489-494. On April 28, 2010, Dr. Peffley reported that Mr. Puckett "*still* has pain in the plantar aspect of the foot[.]" *Id.* (emphasis added). He again assessed tibial sesamoid[itis]. *Id.* Mr. Puckett returned to Dr. Peffley on May 19, 2010, and reported that "the medicine really seems to be helping," but that he "still has pain in his right foot[.]" Tr. 490. Mr. Puckett reported pain in his right foot again in June and July 2010, and in January and February 2011, and Dr. Peffley continued to assess tibial sesamoiditis. Tr. 490-94.

When including the new evidence submitted to the Appeals Council, the record as a whole demonstrates that Mr. Puckett reported pain in his right foot many times over a period lasting more than twelve months. During that same period, Dr. Peffley repeatedly assessed Mr. Puckett as suffering from tibial sesamoiditis. Although there is a roughly eight month window, from October 2009 until May 2010, where there are no medical records documenting right foot pain, the absence of records does not conclusively establish that Mr. Puckett's foot condition was absent during that time. Moreover, the new evidence does not conclusively show that Mr. Puckett was suffering from a "discrete foot" malady in 2010. Instead, it shows that

---

[2] Sesamoiditis is "[i]nflammation of a sesamoid bone." TABER'S CYCLOPEDIC MEDICAL DICTIONARY 2107 (Donald Venes et al. eds. 2009).

Page 13 – OPINION AND ORDER

Dr. Peffley made the same assessment—tibial sesamoiditis—that he had made eight months earlier. The court, therefore, cannot agree that the evidence demonstrates that Mr. Puckett "experienced a number of *discrete* foot maladies[.]" F&R at 7 (emphasis added). Instead, the record may support a finding that Mr. Puckett's right foot condition meets the duration requirement.

Judge Sullivan also found that the ALJ's omission of Mr. Puckett's right foot condition was harmless because there "was no evidence before the ALJ, and none in the record, providing that [Mr. Puckett's] right foot condition created functional limitations or exacerbated his other alleged impairments." F&R at 7. Consequently, Judge Sullivan found that "even if [Mr. Puckett] were able to establish that [his right foot condition] lasted for at least twelve consecutive months, remand . . . is nonetheless inappropriate." F&R at 7. Mr. Puckett argues that, to the contrary, that the ALJ's failure to address his foot condition was harmful because "a reasonable ALJ could find restricted capacities for sustained standing and walking." Pl.'s Obj. at 13. Mr. Puckett cites a number of the ALJ's findings with respect to Mr. Puckett's residual functional capacity that could be impacted by a foot condition, including the ability to climb ramps, stairs, and ladders. *Id.*

The burden of proving that an ALJ's error was prejudicial is not "particularly onerous." *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009). The claimant "must *explain* why the erroneous ruling caused harm." *Id.* (emphasis added). Remand is appropriate where "the circumstances of the case show a substantial likelihood of prejudice[.]" *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011) (internal quotation marks and footnotes omitted). Under this standard, Mr. Puckett's explanation that his foot condition could restrict his functional capacity meets his burden to show a substantial likelihood of prejudice. The ALJ's failure to address Mr. Puckett's foot condition in

Page 14 – OPINION AND ORDER

his written decision was not harmless error and on remand, the Commissioner must address that condition.

### 2. Remand order

Mr. Puckett also objects that Judge Sullivan's recommended remand order is too restrictive. Mr. Puckett argues that the proposed remand order would "lock down the ALJ's assessments of [Theresa] Puckett's observations, Dr. Harmon's opinions and [Mr.] Puckett's symptoms and limitations; and restrict reconsideration to the [s]tep [two] question and, possibly, residual functional capacity." Pl.'s Obj. at 4. Mr. Puckett's objection is not borne out by Judge Sullivan's recommendation. Judge Sullivan made clear that on remand the ALJ "must incorporate any revised findings into his step-five determination." In his response to Mr. Puckett's objections, the Commissioner agrees that on remand, "the ALJ will consider the [effect] of the new evidence on each step of the sequential evaluation process." Def.'s Response to Pl.'s Objections at 3 (Dkt. 18). Anytime a court remands a case with orders to re-evaluate evidence, the Commissioner must evaluate that evidence within the context of the entire record and incorporate any revised findings into the sequential disability analysis.

## CONCLUSION

The court **ADOPTS IN PART** Magistrate Judge Sullivan's findings, Dkt. 15, as follows: The court adopts all of Judge Sullivan's findings except the finding that the ALJ's omission of Mr. Puckett's right foot condition from his decision was harmless error and except for Judge Sullivan's recommended remand order.

The Commissioner's decision is **REVERSED** and the case is **REMANDED**. On remand, the Commissioner should address the additional evidence submitted to the Appeals Council relating to both Mr. Puckett's left shoulder condition and his right foot condition. The

Commissioner must also assess Mr. Puckett's mental impairments and determine whether, even if non-severe, they warrant inclusion into Mr. Puckett's mental RFC. The ALJ must incorporate any revised findings into the five-step disability analysis. If any revised findings alter the evaluation of any other source—such as Mr. Puckett's testimony, Theresa Puckett's lay witness testimony, or Dr. Harmon's medical source statement—the ALJ should re-evaluate those sources.

IT IS SO ORDERED

Dated this 19th day of September, 2012.

/s/ Michael H. Simon
_____
Michael H. Simon
United States District Judge